IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KEVIN TERRY                                                                                          PLAINTIFF

V.                                              NO.  5:07cv00268 JWC

ERNEST GOLDEN, et al                                                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

On February 15, 2008, Defendant Fish filed a motion for summary judgment and brief in support (doc. 27, 28) seeking to dismiss Plaintiff's 42 U.S.C. § 1983 complaint on the grounds that he has failed to state a viable claim against him.  On February 19, 2008, Defendant Tracy also filed a motion for summary judgment and brief in support (doc. 30, 31) seeking to dismiss Plaintiff's complaint on the grounds that he has failed to state a viable claim against him too.  Defendants also filed statements of undisputed facts in support of their motions (doc. 29, 32) pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas.  By orders entered February 19 & 21, 2008 (doc. 33, 35), Plaintiff was notified of his opportunity to file responsive pleadings opposing Defendants' motions for summary judgment.  He was also directed to file separate, short and concise statements setting forth the facts which he thought needed to be decided at a trial if he disagreed with Defendants' statements of fact.  Plaintiff was advised that his failure to file a statement of facts would result in the facts in Defendants' statements being admitted.  Plaintiff has not responded in any manner.  For the reasons explained below, the motions are granted.

**I. Background**

Plaintiff is currently confined to the Arkansas County Detention Center ("ACDC") in DeWitt, Arkansas. On October 19, 2007, he filed this action (doc. 2) alleging that he was booked into the jail on August 23 or 24, 2007, he was denied his glasses for the first six days he was incarcerated, and on the third day he broke his little toe on the stairs because he misjudged the step due to his inability to see clearly. On September 1, 2007, he was given Advil "when they wanted to give them to [him]" for his toe but he did not see the doctor (Defendant Tracy) until September 13, 2007. Defendant Tracy confirmed that Plaintiff's toe was broken but failed to give Plaintiff a cast, splint, or medication for the pain, which he is still experiencing. On the same day he filed his first lawsuit, Plaintiff filed a second § 1983 action (see Case No. 5:07cv00269 JWC) also alleging the denial of appropriate medical care. In that case, Plaintiff alleged that he put in a request due to a tooth ache on September 20, 2007, and was given Advil for pain "when they wanted to give them." He did not see the dentist (Defendant Fish) until October 2, 2007, and two of his top teeth were pulled. The following day he put in a request because he could not eat or sleep and was running a high fever. Another inmate who went with Plaintiff to the dentist the same day had one tooth extracted but was given "Hydrocodone" for pain and Plaintiff received "Propoxyne" (intermittently) which he alleged did not work. By order entered November 8, 2007, the two cases were consolidated into one (doc. 4), with 5:07cv00268-JWC as the lead case.

**II. Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999). A moving party is entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993). A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994).

### III.  Analysis

Pursuant to Local Rule 56.1(c) of the Rules of the United States District Court for the Eastern District of Arkansas, all material facts set forth in Defendants' statements of undisputed facts shall be deemed admitted unless controverted by a statement filed by Plaintiff. Plaintiff has filed no such statements despite a clear opportunity to do so. Therefore although a litigant's verified complaint is generally considered an affidavit for purposes of summary judgment, Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994), the Court adopts Defendants' recitations of the facts. See Jackson v. Arkansas Dep't of Educ., Vocational & Technical Educ. Div., 272 F.3d 1020, 1027 (8th Cir. 2001) ("pursuant to Local

Rule 56.1(c), [plaintiff] forfeited her ability to contest the facts presented in the Department's original summary judgment motion by her failure to respond to the Department's motion"); see also In re: Bridge Info. Sys., Inc., 297 B.R. 759, 762 n.2 (Bankr. E.D. Mo. 2003) (citing Jackson, 272 F.3d at 1027-28) (same); Washington v. Robinson, 68 F.3d 479 (8th Cir. 1995) (unpub. per curiam) (§ 1983 lawsuit involving excessive force used in connection with arrest dismissed on summary judgment motion; no abuse of discretion where district court deemed facts admitted and granted summary judgment based upon plaintiff's failure to respond to the motion within the time required by the Arkansas local rules).

According to Defendant Fish (doc. 29), Plaintiff began experiencing tooth pain in September 2007. He requested dental services by filling out and submitting requests forms to ACDC employees who scheduled a dental appointment for Plaintiff with Defendant Fish on October 2, 2007. Defendant Fish is a general dentist practicing in Stuttgart and DeWitt, Arkansas (doc. 29, Exhibit "A" Affidavit of Defendant Fish). Plaintiff was transported to Defendant Fish's office on October 2, 2007. Defendant Fish does not see or treat patients at the ACDC facility, nor does he have a contract with the ACDC to provide dental care or treatment to its inmates. ACDC employees may schedule an appointment for an ACDC inmate in the same way a non-inmate would schedule an appointment with Defendant Fish. Plaintiff filled out a patient history form prior to seeing Defendant Fish (doc. 29, Exhibit "B" Dental History Form). Plaintiff noted on his patient history form that he had had an "adverse response" to penicillin and Tylenol in the past. Plaintiff advised Defendant Fish that he had tooth pain in two areas (teeth 4 and 12) (doc. 29, Exhibit "A" Affidavit of Defendant Fish). Defendant Fish examined Plaintiff and x-rayed

those areas he had described as painful (doc. 29, Exhibit "C" Progress Notes).  Defendant Fish informed Plaintiff that extraction was an option for dealing with his dental pain and Plaintiff agreed (doc. 29, Exhibit "A" Affidavit of Defendant Fish).  Both teeth were extracted (doc. 29, Exhibit "C" Progress Notes).  At the end of Plaintiff's appointment, Defendant Fish prescribed Plaintiff Darvon (brand name) / Propoxyphene (generic name) for pain relief (doc. 29, Exhibit "A" Affidavit of Defendant Fish & Exhibit "C" Progress Notes).  Defendant Fish's office called a prescription for Darvon into a pharmacy specified by the ACDC and before the appointment ended, Defendant Fish instructed Plaintiff to call his office if he had any problems.  Plaintiff was scheduled for a follow-up appointment on October 10, 2007, which he refused to attend (doc. 29, Exhibit "C" Progress Notes).  According to Defendant Fish, the pain medication Lorcet, also known as Hydrocodone, contains acetaminophen, the generic name for Tylenol which Plaintiff had had an adverse response to in the past (doc. 29, Exhibit "E" 2007 Physician's Desk Reference entry for Lorcet-HD, Lorcet Plus, and Lorcet 10/650).  The pain medication Darvon does not contain acetaminophen (doc. 29, Exhibit "F" 2003 Physician's Desk Reference entry for Darvon).

  According to Defendant Tracy (doc. 32), during Plaintiff's booking, ACDC employees took his glasses.  Plaintiff had difficulty seeing without his glasses and injured his left pinkie toe while walking up some stairs (doc. 32, Exhibit "A" Progress Notes).  ACDC employees scheduled a medical appointment for Plaintiff with Defendant Tracy for September 13, 2007 (doc. 32, Exhibit "B" Affidavit of Defendant Tracy).  Defendant Tracy is a general and family practice physician practicing in DeWitt, Arkansas.  Defendant Tracy does not see or treat patients at the ACDC facility and has no contract with the ACDC to provide medical care or treatment to its inmates.  Instead, ACDC employees may schedule an appointment

Case 5:07-cv-00268-JWC   Document 39   Filed 07/01/08   Page 6 of 12

for an ACDC inmate in the same way a non-inmate would schedule an appointment with Defendant Tracy (doc. 32, Exhibit "B" Affidavit of Defendant Tracy). Plaintiff told Defendant Tracy that he had hurt his left foot/toe approximately three weeks prior to the appointment (doc. 32, Exhibit "A" & "B"). Defendant Tracy examined Plaintiff and x-rayed his left foot. The x-ray revealed a non-displaced fracture of Plaintiff's toe near where the toe connects to the foot (doc. 32, Exhibit "A" & "B"). Defendant Tracy noted that Plaintiff "is not really tender in the foot except for the base of the [pinkie] toe" and instructed Plaintiff to (1) keep the foot elevated, (2) use ice on it, and (3) stay off his feet (doc. 32, Exhibit "A" & "B"). At the end of Plaintiff's appointment, Defendant Tracy told Plaintiff to call his office if Plaintiff had any problems. Defendant Tracy received no further complaints regarding Plaintiff's toe from Plaintiff or ACDC employees (doc. 32, Exhibit "B"). Plaintiff had another appointment with Defendant Tracy on October 18, 2007, regarding an abdominal hernia (doc. 32, Exhibit "A" & "B"). At that time, Defendant Tracy also diagnosed Plaintiff with constipation and anxiety. He prescribed Plaintiff Colace and magnesium citrate for his constipation and Elavil (brand name) / amitriptyline (generic name) for his anxiety (doc. 32, Exhibit "A"). Plaintiff made no complaints regarding his left/toe during that appointment (doc. 32, Exhibit "A" & "B").

**A.   State Actor**

Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated because Defendant Fish prescribed inadequate pain medication following his two dental extractions and because Defendant Tracy failed to splint or cast his broken toe or to prescribe him medication for same. Plaintiff additionally appears to allege that Defendants Fish and Tracy acted under color of state law because their care

6

and treatment of him occurred while he was an inmate at the ACDC. The edicts of § 1983 are clear and mandate the dismissal of Plaintiff's claims against both Defendants:

> Every person who, <u>under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia</u>, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the <u>deprivation of any rights, privileges, or immunities secured by the Constitution and laws</u>, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

<u>Id</u>. (emphasis added). Plainly, § 1983 relief is predicated on the action of a state actor. The traditional definition of "acting under color of state law" requires the defendant in a § 1983 action to have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988) (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)); <u>Dean v. Olibas</u>, 129 F.3d 1001, 1005 (8th Cir. 1997) (to occur under color of law, conduct causing the deprivation of a civil right must be "fairly attributable to the State"). The Supreme Court has set forth a two-part test for analyzing whether conduct fits this description. This Court first must ask "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982). Stated another way, the injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible. <u>Id</u>. If this question is answered affirmatively, the Court must then determine if "the private party charged with the deprivation could be described in all fairness as a state actor." <u>Id</u>.; <u>see</u> <u>also</u> <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 620 (1991).

Plaintiff's case fails at the initial inquiry— his complaint is void of any specific allegation indicating that either Defendant Fish or Tracy acted under color of state law. Compare West, 487 U.S. at 49-52 (private physician, under contract with the state, to provide services at a state-prison hospital on a part-time basis acts under color of state law for § 1983 purposes when treating state prison inmate) (emphasis added). See also, Shipley v. Woodruff, No. 06-1708, 2007 WL 473025, at *2 (W.D. La. Jan. 12, 2007). But see Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994) (holding that West is not limited to private doctors under a contractual relationship with the state but also applies to any private doctor who treats a prisoner pursuant to the state's request and receives payment with state funds; the relevant issue is not the contractual relationship but the fact that the private doctor is performing the exclusively state function of providing medical care to inmates who have no option or recourse to go elsewhere for care). The Eighth Circuit has not addressed the issue. Defendant Fish is a private dentist. He does not see or treat patients at the ACDC facility, nor does he have a contract with the ACDC to provide dental care or treatment to its inmates. Defendant Tracy is a private physician who also does not see or treat patients at the ACDC facility and has no contract with the ACDC to provide medical care or treatment to its inmates. Both Defendants do derive at least some financial benefit from the state albeit for their very limited treatment of inmate-patients. The issue need not be resolved, however, because even if this Court did find that Defendants' actions were fairly attributable to the state, neither was deliberately indifferent to Plaintiff's medical needs.

## B.     Deliberate Medical Indifference

Although suggesting that a more stringent standard might be appropriate in assessing pretrial detainees' medical claims, the Eighth Circuit has not yet determined that detainees are entitled to greater protection than is found in the Eighth Amendment against jail officials' deliberate indifference to their serious medical needs. See Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999), cert. denied, 528 U.S. 1157 (2000) (referring to Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 n.8 (8th Cir. 1989) and David v. Hall, 992 F.2d 151, 152 (8th Cir. 1993)).  Therefore, the Eighth Circuit has generally analyzed pretrial detainees' medical claims under the standard set forth in Estelle v. Gamble, 429 U.S. 97, 104 (1976).

To prevail on his claim of deliberate medical indifference, therefore, Plaintiff must allege acts or omissions by Defendants "sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle, 429 U.S. at 106).  The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly, 205 F.3d at 1096 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); see also Stetter v. Riddick, 6 Fed. Appx. 522 (8th Cir. 2001) (unpub. per curiam) (citing Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)).  This standard has been well settled for some time and Plaintiff's burden is substantial.  In determining whether Defendants were deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th

9

Cir. 1995). Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id.

First, Plaintiff must establish that he suffered from an objectively serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). Next, Plaintiff must establish that Defendants were (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs. Coleman, 114 F.3d at 785-86.

The Court concedes, for the sake of argument, that Plaintiff suffered from an array of serious medical needs. Neither Defendant, however, deliberately disregarded those needs. Plaintiff alleges that he put in a request due to a tooth ache on September 20, 2007, did not see Defendant Fish until October 2, 2007, and was given Advil intermittently until two of his top teeth were pulled. The following day he put in a request because he could not eat or sleep and was running a high fever. According to Plaintiff, another inmate who saw Defendant Fish the same day had one tooth extracted but was given "Hydrocodone" for pain while Plaintiff received "Propoxyne" (intermittently) which he alleges did not work. According to Defendant Fish's facts, which the Court adopts and Plaintiff does not challenge, Plaintiff filled out a patient history form prior to his appointment noting that he had had an "adverse response" to Tylenol in the past. Defendant Fish examined Plaintiff, x-rayed those areas he had described as painful, and ultimately extracted two teeth with Plaintiff's permission. Plaintiff was prescribed Darvon (brand name) / Propoxyphene (generic name) for pain relief. The pain medication Darvon does not

contain acetaminophen, the generic for Tylenol.  Defendant Fish's office called in the prescription and before the appointment ended, instructed Plaintiff to call his office if he had any problems.  Plaintiff refused to attend his scheduled follow-up appointment on October 10, 2007.  Defendant Fish's decision to prescribe Hydrocodone to another inmate he saw the same day but not to Plaintiff was based on sound medical judgment. Hydrocodone, also known as Lorcet, contains acetaminophen, the generic name for Tylenol which Plaintiff indicated had caused him an adverse response in the past.  To prescribe Plaintiff Hydrocodone, in the face of the medical history provided by Plaintiff himself, would have amounted to deliberate indifference— a level of culpability simply not present herein.

With respect to Defendant Tracy, as previously discussed, Plaintiff's toe injury was three weeks old when Defendant Tracy first examined him.  An x-ray showed that Plaintiff's broken toe was healing, and Plaintiff had minimal pain at the time of his appointment. Defendant Tracy ordered Plaintiff to ice and elevate his left foot— the exact care and treatment he would have provided to any patient who presented with these symptoms. Moreover, when he saw Plaintiff again a month later for other unrelated medical issues, Plaintiff made no mention at all of his toe.  Under the circumstances, Plaintiff has failed to demonstrate that Defendant Tracy deliberately disregarded his medical needs.

### IV.  Conclusion

For the reasons explained herein, IT IS, THEREFORE, ORDERED that:

1.	Defendant Fish's motion for summary judgment (doc. 27) is GRANTED and Plaintiff's claims against him are DISMISSED WITH PREJUDICE.

2. Defendant Tracy's motion for summary judgment (doc. 30) is GRANTED and Plaintiff's claims against him are DISMISSED WITH PREJUDICE.

3. Plaintiff's case will proceed only against Defendant Golden at this time.

IT IS SO ORDERED this 1st day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE